IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KHALIL B. EL-AMIN,

    Plaintiff,                                     Case No. 1:04-cv-72

    v.                                             Magistrate Judge Timothy S. Black

FIRST TRANSIT INC.,

    Defendant.

**ORDER GRANTING ENTRY OF SUMMARY JUDGMENT FOR DEFENDANT**

Plaintiff, Khalil El-Amin, initiated this action on September 29, 2003 by filing a *pro se* complaint pursuant to Title VII of the Civil Rights Act, 42 U.S.C. 2000e-2, against his former employer, First Transit, Inc. ("First Transit"). (Doc. 1). Plaintiff is alleging religious discrimination in connection with his release from the training program in August 2001, and his discharge from First Transit on February 4, 2003.

**I.**

On August 11, 2002, Plaintiff filed a joint charge of discrimination against First Transit with the Equal Employment Opportunity Commission ("EEOC") and the Texas Commission on Human Rights. (El-Amin depo. at 18-19). After Plaintiff received notice of his right to sue, he filed suit against First Transit in the United States District Court for the Eastern District of Virginia, alleging that First Transit discriminated against him based on his religion. Thereafter, First Transit filed a motion for a change of venue. The motion was granted, and the case was transferred from the Eastern District of Virginia to the Southern District of Ohio.

On January 21, 2005, First Transit filed the instant motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has filed a response in opposition to First Transit's motion, and First Transit has filed a reply.

**II.**

Approximately, nine years ago, Plaintiff embraced Islam and moved to Virginia from Washington to study at an Islamic academy. As part of his religion, Plaintiff changed his name from Frank Chaney, III to Khalil B. El-Amin. Plaintiff testified that his religion requires him to grow his beard and dye it red. Plaintiff further testified that he must pray, or do prostrations, fives time a day during specific windows of time set by the mosque.

During these prayers, Plaintiff testified that he must face the East, arrange a prayer rug, and then engage in a series of recitations and physical movements involving kneeling, touching the ground, and standing in a proscribed fashion for a set number of times. (El-Amin depo. at 88-91). Praying requires Plaintiff's complete attention for the seven to ten minutes that he prays, and he cannot engage in conversation, take notes, or otherwise interact with others during his prayers. *Id.* at 92.

 In addition to the prayer requirements discussed above, on Fridays, Plaintiff is required to attend weekly services at his mosque. *Id.* at 96-100. During these services, which begin at a set time, there is a speaker, the Imam, who leads the prayer and offers a message that can last from forty-five minutes to an hour. *Id.* at 98. Plaintiff testified that in the past nine years, he has never missed a required prayer or a Friday mosque service.

*Id.* at 95, 100-101.

### A.

Plaintiff first began working for First Transit in August of 1999 as a bus operator in Northern Virginia. *Id.* at 57. In January of 2001, Plaintiff resigned and relocated to Arlington, Texas. *Id.* at 129. Once in Texas, Plaintiff decided to re-apply for a job with First Transit. First Transit did not operate in the Arlington area, and, as a result, Plaintiff applied for a position with First Transit in Garland, Texas, where First Transit had a contract with Dallas Area Rapid Transit (DART) to operate its bus system. (Doc. 41, Affidavit of Philip DeLisle, "(DeLisle Aff.")") attached hereto as Exhibit A, at ¶ 4).

Before Plaintiff could begin operating a bus for First Transit in Texas, he had to complete an intensive training program that covered topics such as bus and fare box operation, safety, the communication system, the bus routes, and First Transit's policies and procedures. (DeLisle Aff. at ¶ 20). When Plaintiff reported for the first day of training on August 24, 2001, his beard was excess of one inch in length and dyed red. (Plaintiff's Dep. at 157-58; DeLisle Aff. at ¶ 10).

The contract between First Transit and DART contained a provision whereby First Transit's operators were required to abide by DART's grooming and appearance policies, which prohibited beards in excess of one inch in length or depth. (DeLisle Aff. at ¶¶ 5-6; DeLisle Aff. Exh. 1 at § 3.3). Furthermore, the agreement between DART and First Transit provided for the assessment of liquidated damages against First Transit for each day that any operator was in violation of DART's grooming policy. (DeLisle Aff. Ex. 2 at

§ C(1)).  Plaintiff communicated to First Transit that due to his religion, he could not shave his beard.  Consequently, First Transit released Plaintiff from training for refusing to comply with DART's grooming policy.  (DeLisle Aff. at ¶ 11).

Thereafter, Plaintiff contacted the Council on American-Islamic Relations (CAIR), regarding his employment with First Transit, and representatives from CAIR then contacted both DART and First Transit on Plaintiff's behalf to investigate whether Plaintiff's beard could be accommodated.  (El-Amin depo. at 155);(DeLisle Aff. at ¶ 13).  Following CAIR's initial contact with First Transit, Phil DeLisle, First Transit's general manager in Garland, Texas, had multiple telephone conversations and exchanged correspondence with both CAIR and DART in an attempt to obtain an accommodation that would permit Plaintiff to return to work with his beard.  (DeLisle Aff. at ¶¶ 14-16).

Ultimately, DART agreed to relax its contractual provision that required First Transit to comply with DART's grooming policy.  (DeLisle Aff. at ¶ 17).  Once DART agreed to do so, First Transit invited Plaintiff to return to training at its next available session, which began on January 25, 2002. (DeLisle Aff. at ¶ 18, Ex. 3).

**B.**

When Plaintiff returned to training in January 2002, he informed First Transit that, due to his religion, he was required to pray five times a day during various "windows"of time, each of which stretched over a period of several hours.  (El-Amin depo. at 83-90, 174, Ex. 12).  Plaintiff gave the Company a prayer schedule that showed the times during

-4-

which he had to pray.[1] (El-Amin depo. Ex. 12). In addition to his daily prayers, Plaintiff attended his mosque on Fridays for a service that started at approximately 1:00 p.m. and lasted from forty-five (45) minutes to an hour. *Id*. at 98-100. Depending on the location of Plaintiff's training, he testified that his mosque could be as far as thirty (30) minutes away from the training facility by car. *Id*. at 182.

Regular attendance was essential to the Company's training program. Before Plaintiff began training on January 25, 2002, he executed an Applicant Statement, which contained the following provision regarding attendance:

> If applicant is late more than once or absent more than once during the training period, they will be dismissed from the training program. Much information has to be covered in the 25 days allotted and more than one absence puts the applicant too far back to catch up. Habitual lateness cannot be tolerated from bus drivers, and trainees are expected to adhere to the same requirements as experienced and professional drivers.

(El-Amin depo. Ex. 10 at ¶ 7).

Regular attendance at the training courses was essential because First Transit covered a large amount of information in a short amount of time. (DeLisle Aff. at ¶ 20). Each day of training built on the information from the day before, and there was only one class being trained at any one time. (El-Amin depo. at 114; DeLisle Aff. at ¶¶ 21-22).

Plaintiff's first day of training was Friday, January 25, 2002. (El-Amin depo. at 171). Although training that day was scheduled to last until 3:00 p.m., Plaintiff left class

---

[1] On this schedule, for example, Plaintiff had to pray once between 6:15 a.m. and 7:26 a.m., once between 7:26 a.m. and 12:44 p.m., once between 12:44 p.m. and 3:32 p.m., once between 3:32 p.m. and 5:55 p.m., and then a final prayer between 5:55 p.m. and 7:03 p.m. (El-Amin depo. Ex. 12)

at approximately 12:30 p.m. to attend his mosque and did not return. *Id.* at 172, 181- 82, Ex.11). Plaintiff signed an attendance deviation form acknowledging that he left early on the first day. *Id.* at Ex. 13.

The following week, Plaintiff prayed each day either during his break times or during class in an empty cubicle that First Transit made available to him for that purpose. (El-Amin depo. at 189). The following Friday, February 1, 2002, training was again scheduled to last until 3:00 p.m.. However, Plaintiff again left before 1:00 p.m. to attend his mosque. (El-Amin depo. at 190-91; Ex. 11). Plaintiff was given a second attendance deviation for this absence, which he signed. (El-Amin depo. Ex. 14).

The next day, Saturday, February 2, 2002, Plaintiff was scheduled to report to training at 4:45 a.m. *Id.* at Ex. 11. Plaintiff, however, admittedly overslept and was over an hour late to training. *Id.* at 199. Plaintiff was given a third attendance deviation, which he signed. *Id*. at Ex. 14. When Plaintiff returned to work on the following Monday, February 4, 2002, he was terminated from the training program for violating First Transit's attendance policy. *Id.* at 206.

Eight out of twenty-seven trainees in Plaintiff's class (including Plaintiff) were dismissed from training because of attendance. (Affidavit of Angela Reverman at ¶ 3).

### III.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law.  In response to a properly supported motion, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).  Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion.  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990).

The Court's function is not to weigh the evidence and determine the truth of the matters asserted, but to determine if there is a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 249.  The inquiry is whether the evidence presents a sufficient disagreement over the facts to require submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law.  *Id.* at 251-52.

The Court is not duty bound to search the entire record in an effort to establish a

lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson,* 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05.

## IV.

Plaintiff's complaint seeks redress for alleged religious discrimination associated with his termination from training in August 2001 for wearing his beard and his termination from training in February 2002 for violating First Transits attendance policy. First Transit, however, maintains that whether Plaintiff's claims are viewed as ones for disparate treatment or for failure to accommodate, Plaintiff has failed to establish a genuine issue as to any material fact , and, therefore, First Transit is entitled to summary judgment as a matter of law. The Court agrees.

## A.

In disparate treatment cases, a plaintiff may prove discrimination under Title VII through direct or circumstantial evidence. In the absence of direct evidence of discrimination, a plaintiff must establish its case under the framework first enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582-83 (6th Cir.1992).

The *McDonnell Douglas* framework consists of three stages. First, the plaintiff must establish a *prima facie* case of discrimination. To establish his *prima facie* case, Plaintiff must show that (1) he is a member of a protected group; (2) he was subject to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated less favorably than a similarly-situated employee outside the protected class. *Hall v. Baptist Memorial Health Care Corp.*, 215 F.3d 618, 625 -626 (6th Cir. 2000) (citing *McDonnell Douglas,* 411 U.S. at 802; *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981); *Talley v. Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1246 (6th Cir. 1995)).

If the plaintiff makes a *prima facie* case, a presumption of discrimination arises. To overcome this presumption, the defendant must articulate a legitimate non-discriminatory reason for the plaintiff's termination. *Id.* If the defendant can do so, the burden shifts back to the plaintiff to prove that the articulated reason was merely a pretext for the real reason, unlawful discrimination. *Id.*

Here, with respect to Plaintiff's claim of discrimination relating to his discharge from training in August 2001, it is undisputed that Plaintiff satisfies the first three elements of a *prima facie* case. However, Plaintiff has not provided any evidence to establish the fourth element, *i.e.*, that he was replaced by a person outside of the protected class and/or that he was treated differently than a similarly situated employee outside of the protected class. Thus, as noted by First Transit, Plaintiff has not shown that he was

replaced by anyone, nor has he identified any similarly situated non-Muslim employee who wore a beard, longer than one inch, who was not released from training.

Similarly, Plaintiff also fails to establish the fourth element of a *prima facie* case of discrimination with respect to his claim of discrimination relating to his termination for violating First Transit's attendance policy. Plaintiff has not provided any evidence or argument showing that he was replaced by someone outside of his protected class, nor does he identify any similarly situated non-Muslim employee who violated First Transit's attendance policy and was not terminated. As noted above, eight out of twenty-seven people in Plaintiff's training class were terminated for violating the attendance policy. (Reverman Aff. at ¶ 3).

Moreover, even if Plaintiff could establish a *prima facie* case of discrimination, First Transit has articulated a non-discriminatory reason for both Plaintiff's discharge from training and his termination for attendance, *i.e,* First Transit's grooming and attendance policies prohibit beards in excess of one inch and mandate dismissal for being late or absent more than once during the training period. Additionally, Plaintiff has not offered any evidence or argument to show pretext.

Accordingly, to the extent that Plaintiff is alleging a claim of religious discrimination based on disparate treatment, he has failed to establish a genuine issue of material fact, and First Transit is entitled to judgment as a matter of law.

**B.**

The heart of Plaintiff's complaint is that First Transit failed to accommodate his religion in violation of Title VII. First Transit, however, maintains that it could not reasonably accommodate Plaintiff without suffering an undue hardship.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's religion." *Cooper v. Oak Rubber Co.,* 15 F.3d 1375, 1378 (6th Cir. 1994)(quoting 42 U.S.C. § 2000e-2(a)(1) (internal alterations omitted)); *accord Virts v. Consol.Freightways Corp.,* 285 F.3d 508, 516 (6th Cir. 2002).

"The analysis of any religious accommodation case begins with the question of whether the employee has established a *prima facie* case of religious discrimination." *Smith v. Pyro Mining Co.,* 827 F.2d 1081, 1085 (6th Cir.1987). To establish a *prima facie* case, a plaintiff must demonstrate that (1) he holds a sincere religious belief that conflicts with an employment requirement; (2) he has informed the employer about the conflicts; and (3) he was discharged or disciplined for failing to comply with the conflicting employment requirement. *Id.*

Once the plaintiff has established a *prima facie* case, the burden shifts to the defendant employer to show that it could not reasonably accommodate the employee without undue hardship. *Id.; see also Cooper,* 15 F.3d at 1378. A proposed

accommodation is an "undue hardship" if it results in more than a "*de minimis*" cost to the employer. *TWA, Inc. v. Hardison,* 432 U.S. 63, 84 (1977); *see also Bhatia v. Chevron U.S.A., Inc.*, 734 F.2d 1382, 1384 (9th Cir. 1984)("[E]mployer may prove that an employee's proposal would involve undue hardship by showing that either its impact on coworkers or its cost would be more than *de minimis*"). The reasonableness of an employer's attempt to accommodate is determined on a case-by-case basis. *Virts v. Consol. Freightways Corp. of Delaware,* 285 F.3d 508, 516 (6th Cir. 2002) (citing *Cooper,* 15 F.3d at 1378).

Here, although Plaintiff has met his burden of establishing a *prima facie* case for failure to accommodate, the Court nonetheless finds further that First Transit has established that it could not reasonably accommodate Plaintiff without undue hardship.

**i.**

The contract between First Transit and DART prohibited drivers from wearing a beard in excess of one inch. Thus, First Transit would have breached the contract with DART by permitting Plaintiff to remain in the training class. Furthermore, the contract between First Transit and DART included a liquidated damages clause that would require First Transit to pay $25 per day for everyday Plaintiff worked in violation of the grooming policy. Additionally, the contract permitted DART to terminate the agreement. Under these undisputed circumstances, where the accommodation of Plaintiff's beard would cost First Transit $25 per day, such an accommodation would ultimately amount to more than a *de minimis* cost to First Transit. *TWA,* 432 U.S. at 84 ; *see also Draper v.*

*United States Pipe & Foundry Co.,* 527 F.2d 515, 520 (6th Cir. 1975)*; Weber v. Roadway Express, Inc.,* 199 F.3d 270, 275 (5th Cir. 2000). Moreover, First Transit accommodated Plaintiff's beard after DART agreed to relax its grooming policy, and Plaintiff returned to training in January 2002.

**ii.**

Plaintiff further maintains that he was terminated because of his religion and that First Transit failed to accommodate his need to attend Friday prayer services at his mosque. Plaintiff's assertions lack merit.

Plaintiff's mosque was located approximately thirty minutes away from the First Transit facility. Plaintiff testified that the Prayer service began at 1:00 p.m and lasted one hour. First Transit's training program required Plaintiff to attend classes on Fridays until 3:00 p.m. Thus, attending the Friday Prayer service would require Plaintiff to miss up to two hours of Training. Yet, Plaintiff argues that First Transit should accommodated his religion and permit him to leave around 1:00 p.m. on Fridays, even though classes were scheduled until 3:00 p.m.

Given the volume of information that is covered during the 35-day training period, regular attendance of all the classes is very important. (El-Amin depo. Ex. 10 at ¶ 7). The record contains an Applicant Statement, signed by Plaintiff, which contained the following provision regarding attendance:

> If applicant is late more than once or absent more than once during the training period, they will be dismissed from the training program. Much information has to be covered in the 35 days allotted and more than one

>absence puts the applicant too far back to catch up. Habitual lateness cannot be tolerated from bus drivers, and trainees are expected to adhere to the same requirements as experienced and professional drivers.

*Id*.

Thus, Plaintiff's signature shows that he understood the importance of attendance. Moreover, the Applicant Statement does not contain any provisions allowing for excused absences or deviations from the training schedule relating to religious observances or for any other reason.

Plaintiff, however, argues that First Transit should have accommodated his need to attend prayer services on Friday. Plaintiff asserts that:

>[T]here has never been any communication between myself and the supervisors at First Transit that involved an attempt to compromise, accommodate or come to an agreement. Nowhere will any of the records reflect a discussion that took place where I was offered the opportunity to make any adjustments in my schedule for Fridays.

(Doc. 42, p. 3).[2]

Assuming plaintiff's assertion is correct, and First Transit did not offer a reasonable accommodation, then the Court must determine whether a reasonable accommodation would place an undue burden on the employer. *Creusere v. Board of Educ. of City School Dist. of City of Cincinnati,* 88 Fed.Appx. 813, 818, 2003 WL 23156643, **5 (6th Cir. 2003)(citing *TWA,* 432 U.S. at 84). Thus, an employer is liable

---

[2] There is also no evidence in the record that Plaintiff proposed any reasonable accommodation, other than simply missing two hours of class.

under Title VII only if the accommodation of the employee's beliefs would not present an undue burden. *Id.*

First Transit maintains that "because of the cumulative nature of the training program and the fact that it was only offered once every few months, it simply was unreasonable and an undue hardship to permit Plaintiff to miss up to two hours of class every Friday to attend his congregation." (Doc. 41, p. 19). First Transit's training course operates to ensure that all drivers have the skills to safely operate its vehicles in a manner consistent with its policies and regulations.

Thus, in light of safety concerns and the need for uniformity and consistency among its drivers, the Court finds that permitting Plaintiff to miss up to two hours of training on Fridays is more than a *de minimis* cost to First Transit. *See Draper v. U.S. Pipe & Foundry Co.,* 527 F.2d 515, 521 (6th Cir. 1975)(safety considerations are highly relevant in determining whether a proposed accommodation would produce an undue hardship on the employer's business.)

Furthermore, at his deposition, when asked what type of accommodation First Transit should have provided, Plaintiff testified that he expected First Transit to say "someone will get paid overtime for working with you on this extra two hours for that Friday." (El-Amin depo. at 213). However, a proposed accommodation that requires the employer to pay another employee overtime is an undue hardship on the employer. *EEOC v. Bridgestone/Firestone*, Inc., 95 F. Supp.2d 913, 929 (C.D. Ill. 2000) ("[E]mployers are simply not required to pay premium wages to accommodate an

employee's religious conflict").  Thus, Plaintiff's proposed accommodation would pose an undue burden on First Transit.

## V.

Accordingly, the Court finds that Plaintiff has failed to establish a genuine issue of material fact on any of his claims, and Defendant is entitled to judgment as a matter of law.  **IT IS THEREFORE ORDERED THAT** First Transit's motion for summary judgment (Doc. 43) is **GRANTED**, and this case is **CLOSED**.


Date:  May 11, 2005                                      s/ Timothy S. Black
                                                         Timothy S. Black
                                                         United States Magistrate Judge